the defendant, as disclosed by various interviews when the defendant was present, and by the defendant's own admission, testified to by witnesses produced by the people, and by admissions of the defendant that he had been to Boston and passed under the name of Burrowe, and had pledged the stock. If the defendant was Burrowe, as the jury found, and pledged the stock in Boston, and knew the purpose of Goslin to procure it to be stolen, so that the defendant could negotiate it in that or some other city, the fair inference is that the defendant received the stock in the city of New York and himself carried it to Boston, or had it sent to him there, which would amount to the same thing. According to the people's witnesses the stock was stolen here, and received by Goslin here, all to the knowledge of the defendant. In furtherance of the scheme the defendant subsequently negotiated it. The only fair inference to be drawn from such a state of affairs is that it was delivered to the defendant here, and that he took it to Boston, or that it was transported to Boston from the city of New York by his direction, which would amount in law to a delivery here. Knowledge that goods received were stolen may be proved by circumstances (People v. Schooley, 149 N. Y. 99, 43 N. E. 536), and there is no reason why the place of receipt cannot also be proved by circumstances.

There was no reversible error in permitting the witness Jobelman to detail the conversation had between himself and Goslin and the defendant, in which Goslin asked the witness to find him another bright young man who would commit a similar larceny, for that was only a part of the conversation in which the defendant admitted that he was Burrowe and told the witness that he would not have known him if he had seen him then with his beard and cane and rheumatism.

Nor was there any error committed in overruling the objections to questions put to the defendant while on the stand. He submitted himself as a witness in his own behalf, and questions respecting his past life and conduct were proper.

We think there was sufficient evidence to show that the crime of receiving the property knowing it to have been stolen was committed in the county of New York, and that the defendant was properly convicted, and therefore the judgment appealed from should be affirmed. All concur.

---

### RICCIO v. INTERNATIONAL RY. CO.

(Supreme Court, Trial Term, Erie County. June, 1909.)

1. MASTER AND SERVANT (§ 194*)—FELLOW SERVANTS—SERVANT NOT ON DUTY.
     Where an employé of a railroad company travels back and forth from his home to the place where his services are rendered on the cars of the company, and his transportation free of charge constitutes part of the contract of service, he is while so traveling an employé, and in the absence of statute he cannot recover for an injury occasioned through the negligence of a co-employé.

     [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 384; Dec. Dig. § 194.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. MASTER AND SERVANT (§ 181\*)—FELLOW SERVANTS—STATUTES LIMITING DOCTRINE—APPLICATION TO STREET RAILROADS.**

Laws 1890, p. 1082, c. 565, providing that an employé having the control and direction of the movement of cars, etc., is not a fellow servant of other employés, is applicable to street railroads, and an employé of a street railroad company, injured while in cars traveling as an employé from his home to the place where his services are rendered, in consequence of the negligence of the motorman, may recover.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 360; Dec. Dig. § 181.\*]

Action by Martin Riccio against the International Railway Company. Motion for new trial on the court's minutes after verdict for plaintiff. Denied.

Philip Fennelly, for plaintiff.
Charles B. Sears, for defendant.

WHEELER, J. The jury rendered a verdict in favor of the plaintiff for personal injuries claimed to have been received by him while alighting from one of defendant's street cars, caused by the sudden starting of the car, by which it is alleged he was thrown to the pavement. It appears from the evidence on behalf of the plaintiff that for several days prior to the accident he had been employed by the defendant as a laborer, engaged with others in constructing tracks in a neighboring street near the place of the accident; that he received $1.75 a day for his labor, and was given in addition tickets entitling him to transportation to and from his home to his place of labor; that on the morning in question he boarded one of the defendant's cars to go to his place of labor, and used one of the tickets in question; and that in attempting to alight at his destination met with the accident for which this action was brought.

The defendant contends that, if there was any negligence on the part of the motorman or conductor in charge of the car in question, it was the negligence of co-employés, and the plaintiff cannot recover. Unless the provisions of chapter 565, p. 1082, of the Laws of 1890, amending the general railroad law of the state, and commonly known as the "Barnes Act," has altered the law as it previously existed, the defendant's contention is correct; for prior to the passage of that act it was held that where a person in the employ of a railroad company travels back and forth from his home to the place where his services are rendered upon the cars of the company, and his transportation, free of charge, constituted part of the contract of service, while so traveling he is an employé, not a passenger, and for an injury to him through the negligence of a co-employé the company is not liable. Vick v. N. Y. C. & H. R. R. R. Co., 95 N. Y. 267, 47 Am. Rep. 36.

Chapter 565, p. 1082, of the Laws of 1890, above referred to, among other things, declares, in addition to the liability of a railroad corporation existing by law:

"That the persons engaged in the service of any railroad corporation, foreign or domestic, doing business in this state, or in the service of a receiver thereof, who are intrusted by such corporation or receiver, with the authori-

ty of superintendence, control or command of other persons in the employment of such corporation or receiver, or with the authority to direct or control any other employé in the performance of the duty of such employé, or who have, as a part of their duty, for the time being, physical control or direction of the movement of a signal, switch, locomotive engine, car, train or telegraph office, are vice principals of such corporation or receiver, and are not fellow servants of such injured or deceased employé."

If, therefore, this act relates to and governs street surface railways as well as steam commercial roads, then it follows that the rule of law formerly existing which precluded a recovery in a case like the one now under consideration has been modified by the statute, and the conductor and motorman in charge of the operation of the car from which the plaintiff fell ceased to be co-employés, and stand in the relation of a vice principal to the plaintiff, and the plaintiff may recover notwithstanding.

In the recent case of Forton v. International Railway Company, 116 N. Y. Supp. 746, we had occasion to pass upon this question, and held that the act in question applied to street surface railways as well as to steam railroads. We based our decision in that case upon the fact that the act in question formed a part of the general railroad law, and was made an added section to that act; that the general railroad law provided for the incorporation and management of street surface railways, as well as those operated by steam; that sections 30 to 59, inclusive, of the law, relate to the "construction, operation, and management" of railroad companies. We called attention to the provisions of section 42 of the act (as amended by Laws 1895, p. 301, c. 513, § 1), which immediately preceded the amendment in question, known as section 42a (Laws 1906, p. 1682, c. 657, § 1), which section provides:

"Any railroad corporation may employ any inhabitant of the state, of the age of twenty-one years, not addicted to the use of intoxicating liquors, as a car driver, conductor, motorman, or gripman, or in any other capacity, if fit and competent therefor. All applicants for positions as motormen or gripmen on any street surface railroad in this state shall be subjected to a thorough examination by the officers of the corporation as to their habits, physical ability and intelligence," etc.

We therefore concluded that the amendment in question was intended to apply to and deal with street railways. We see no occasion for changing the view there expressed, and in this case hold that the act in question applies to the situation developed in this case, and that those in charge of the operation of the car from which the plaintiff was thrown when alighting are not to be deemed co-employés of the plaintiff, and the rule of law stated in Vick v. N. Y. Central, 95 N. Y. 267, 47 Am. Rep. 36, has been changed by the statute in question.

The defendant's motion for a new trial is therefore denied. So ordered.